**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE FRISCIA, and all other persons similarly situated, | : : : : |
| Plaintiff, | : Civil Action No. 16-3754 (ES) (SCM) : |
| v. | : OPINION : : |
| PANERA BREAD COMPANY, and PANERA, LLC, | : : : |
| Defendants. | : : : |

**SALAS, DISTRICT JUDGE**

Plaintiff Jacqueline Friscia brings this putative collective and class action against Defendants Panera Bread Company and Panera, LLC (together, "Panera") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, *et seq*. Friscia, a former Panera assistant manager, alleges that Panera misclassified her and other assistant store managers as "exempt" under the FLSA and therefore failed to pay them overtime wages.

Pending before the Court are (i) Friscia's motion for conditional certification of a proposed collective action under Section 216(b) of the FLSA (D.E. No. 38); and (ii) Panera's motion to strike Friscia's motion and supporting declarations (D.E. No. 55). The Court has subject-matter jurisdiction over Friscia's FLSA claims under 28 U.S.C. § 1331 and Friscia's NJWHL claims under 28 U.S.C. § 1367. The Court has considered the parties' submissions regarding the pending motions and decides these matters without oral argument. *See* Fed. R. Civ. P. 78(b). For the

following reasons, the Court GRANTS-in-part and DENIES-in-part Friscia's motion for conditional certification and DENIES *without prejudice* Panera's motion to strike.

## I.   Background

Friscia worked as a full-time assistant manager at Panera's Woodbridge, New Jersey location from August 2012 to January 2015. (D.E. No. 36, Second Amended Collective and Class Action Complaint ¶ 11). She alleges that her "primary job duty was to perform manual, non-managerial tasks which included making coffee, taking food orders, making sandwiches, cleaning the store, working the cash register, and washing dishes." (*Id.* ¶ 34). According to Friscia, her "primary job duty was not managing the enterprise, or managing a customarily recognized department or subdivision of the restaurant." (*Id.* ¶ 33). She seeks conditional certification of the following proposed collective:

> Plaintiff and all other individuals who currently or formerly worked for Panera Bread Company and/or Panera, LLC as assistant managers in New Jersey, New York, or Massachusetts from February 1, 2014 to the present and did not receive overtime compensation for hours worked over 40 in a work week.

(D.E. No. 39 at 2).

## II.   Legal Standard

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). In Section 216(b), the FLSA grants employees the right to bring suit on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b); *see Symczyk*, 569 U.S. at 69. Such an FLSA suit—not to be confused with a class action under Federal Rule of Civil Procedure 23—is known as a "collective action." *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.* at 170. To become parties to

an FLSA collective action, employees "must affirmatively opt-in by filing written consents with the court." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242-43 (3d Cir. 2013) (citing 29 U.S.C. § 216(b)). "This feature distinguishes the collective-action mechanism under Section 216(b) from the class-action mechanism under Rule 23, where, once the class is certified, those not wishing to be included in the class must affirmatively opt-out." *Id.* at 243.

Courts approach collective-action certification under the FLSA through a two-step process. *Id.* The first step is deciding whether to grant "conditional certification"—the type of certification at issue here. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66. Applying a "fairly lenient standard," courts make a preliminary determination on whether the named plaintiff has made a "modest factual showing" that the employees identified in their complaint are "similarly situated." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 & n.4 (3d Cir. 2012). "Being similarly situated" means that members of a collective action are "subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id.* at 538. "Under the modest factual showing standard, a plaintiff must produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk*, 656 F.3d at 193 (internal quotation marks and citations omitted).

A court's grant of conditional certification is an exercise of its "discretionary power, upheld in *Hoffmann-La Roche*, to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under FLSA." *Id.* at 194 (internal quotation marks and citations omitted). Upon a court's preliminary determination that the plaintiff has successfully produced some evidence of similarly situated employees, notice of

the suit is sent to this class of employees, who may join the action by returning a signed consent form to the court. *Camesi*, 729 F.3d at 242-43 (citing 29 U.S.C. § 216(b)).

The second step is deciding whether to grant final certification. *Symczyk*, 656 F.3d at 192. During this step, the plaintiffs must satisfy a preponderance-of-the-evidence standard. *Zavala*, 691 F.3d at 537. That is, they will have to show it is "more likely than not" that "plaintiffs who have opted in are in fact similarly situated to the named plaintiff[]." *Id.* (internal quotation marks and citations omitted).

### III.  Discussion

#### A.  Friscia's Motion for Conditional Certification under § 216(b) of the FLSA

##### 1.  Friscia's Evidence

Friscia supports her motion with two declarations—one from her and one from Diana Manrique, a former Panera assistant manager, general manager, and training manager. (D.E. Nos. 40-1 ("Friscia Decl.") & 40-2 ("Manrique Decl.")). Friscia testifies that she "routinely worked five (5) days a week" and "was scheduled to work forty-five (45) hours per week, but actually worked approximately fifty-five (55) to sixty (60) hours per week." (Friscia Decl. ¶¶ 11-12). She says she "was paid $800 per week, and [] sometimes received a minimal quarterly bonus," but was not paid overtime compensation. (*Id.* ¶¶ 10, 8). She also says she "was directed by management, several times a week, to stay before [her] shift and/or work after [her] shift to take over the duties of other workers so the company could avoid paying the other employees their wages and overtime pay." (*Id.* ¶ 9). According to Friscia, "Assistant managers like [her] did not hire or fire other employees. It was company policy that only store managers at each location could hire and fire employees." (*Id.* ¶ 5). She adds, "All training manuals, policies and procedures came from

corporate and were required to be followed by me and all other assistant managers at Panera locations nationwide." (*Id.* ¶ 15).

Friscia "attended training sessions in several of Panera's restaurant locations throughout New Jersey with employees who worked at many different Panera restaurant locations." (*Id.* ¶ 14). Friscia states that the "other assistant managers present at these training sessions" came "from the Edison, North Brunswick, East Brunswick, Manalapan, and Old Bridge stores, as well as other stores . . . ." (*Id.* ¶ 16). Friscia attests that these other assistant managers "discussed their day to day duties, which were the same as [hers]." (*Id.*). Friscia recounts that "[t]hese meetings were run by managers that instructed [her] and all other assistant managers present on our day to day tasks and duties, and on Panera's corporate time and pay policies . . . ." (*Id.* ¶ 14). She explains that "[i]t did not matter what restaurant location [they] worked at—[they] were all told the same thing and expected to follow the same training, rules and procedures." (*Id.*). Friscia also says that, "[w]hile at these other locations, [she] personally observed assistant managers performing the same manual tasks that assistant managers performed at the Woodbridge location where [she] worked." (*Id.* ¶ 16).

Friscia's supporting witness, Diana Manrique, worked at Panera's Woodbridge, New Jersey location from approximately 2005 to 2014. (Manrique Decl. ¶ 2). Manrique testifies that she "was hired as an assistant manager and spent approximately 4 months in that position," after which she was "promoted to a general manager." (*Id.*). Manrique "also worked as a training manager, where [she] trained general managers who worked at corporate Panera locations throughout New Jersey, New York, and Massachusetts." (*Id.*). To become a training manager, Manrique "was required to be trained in all restaurant positions, including the assistant manager

position." (*Id.* ¶ 3). She therefore "received training about the [assistant manager] position, and trained others about the job duties of the assistant manager and their role at the restaurant." (*Id.*).

Manrique testifies that the "assistant manager primarily performed the same job duties as associates. Assistant managers and associates spent their work day making coffee, sandwiches and other food, cleaning[,] and taking orders from customers as a cashier." (*Id.* ¶ 9). She explains that "[a]ssistant managers were placed on the schedule with the same shifts and job duties as Associates, such as morning shift – cashier, afternoon shift – sandwiches, etc." (*Id.*). Manrique also describes Panera's "Deployment Charts," which "mapped out every employee in a specific position." (*Id.*). "If you weren't the manager in charge ("MIC") of the shift then you were placed in a position, [e.g.,] cashier, expeditor, barista, etc." (*Id.*).

According to Manrique, the "assistant manager spent approximately 5-10 hours a week on additional tasks helping the general manager, such as helping with the schedule, training if needed, cash management, and help with inventory and placing food orders." (*Id.* ¶ 10). She explains that "[a]ssistant managers were not required to clock in and out and there was no system keeping track of their time spent working." (*Id.* ¶ 12). She also states that "[a]ssistant managers would routinely work at least 45 hours a week, but their paychecks would list 40 hours on it as a default because their time was not tracked." (*Id.*).

In her role as general manager, Manrique "attended monthly meetings at other corporate Panera locations." (*Id.* ¶ 4). She recalls going to Panera locations "in Princeton, Edison, Old Bridge, and Manalapan, New Jersey," among others. (*See id.*). She states that "[f]rom 2004-2014, [she] probably went to these locations a total of 36 to 40 times." (*Id.*). And she says that "[w]hile at these other locations, [she] personally observed assistant managers performing the same tasks that assistant managers performed at the Woodbridge location where [she] worked." (*Id.*).

Manrique testifies that "[a]ll training manuals, policies and procedures came from corporate and were required to be followed by [her] and all other managers at Panera locations nationwide."  (*Id.* ¶ 5).  According to Manrique, "[t]hese policies and procedures are sent down from corporate, to district managers, and then to general managers at each store location."  (*Id.*).

Finally, Manrique attests that "[a]ll assistant managers, regardless of the Panera location where they worked, would have spent the vast majority of their time as a cashier, making sandwiches, or performing the other types of tasks performed by associates."  (*Id.* ¶ 13).  She adds, "[t]his is how [she] was trained, how [she] trained [her] associates, how [she] trained other general managers, and what [she] personally observed at all the Panera locations [she] visited."  (*Id.*).

### 2.     **Panera's Opposition**

Panera mounts a robust opposition to Friscia's motion.  To start, Panera argues that Friscia "falls woefully short of the requisite factual showing that she and the former salaried Assistant Managers she seeks to represent are sufficiently similarly situated to warrant converting this from a single-plaintiff case into a case involving hundreds of plaintiffs."  (D.E. No. 45 at 2).  Panera emphasizes that Friscia worked in only one Panera location and for only a fraction of the relevant timeframe.  (*See id.* at 4).  Panera challenges Friscia's declaration as "self-serving," "riddled with inadmissible hearsay," and "devoid of basic detailed facts."  (*Id.* at 2).  And Panera contends that Friscia "establishes nothing about the day-to-day duties of the limited group of Assistant Managers she may have attended [training sessions] with, much less the hundreds more she purports to represent."  (*Id.* at 5).

Panera also challenges Friscia's reliance on Manrique.  Panera points out that Manrique is Friscia's aunt, who "was terminated after allowing an associate to work 'off the clock,' in violation of Panera policy and the very laws Plaintiff places at issue."  (*Id.* at 16).  Panera says Manrique's

"biased testimony does little to help Plaintiff's case." (*Id.*). Generally, Panera characterizes Manrique's declaration as "(i) inaccurate, (ii) inconsistent with lessons others took from her, and (iii) irrelevant to the actual day-to-day duties Assistant Managers performed across the three-state area during 2014, 2015, and 2016." (*Id.* at 2).

Panera says it has "developed overwhelming evidence confirming that the putative collective cannot be bound together in ways that matter for the conditional certification inquiry." (*Id.* at 3). To that end, Panera submits fourteen declarations from various Panera employees, managers, executives, and partners. (*See* D.E. Nos. 45-2 through 45-15). Panera uses this testimony, for example, to distinguish the various cafes within the proposed collective, arguing that they differ in their *location* ("An Assistant Manager who managed a cafe with a large dining room had a different operation to manage than another who manages a food court cafe with no dining room at all." (D.E. No. 45 at 10)); *services* ("Some cafes feature 'kiosk order,' 'rapid pickup,' drive-thru service, delivery, a mix of these services, or none at all." (*id.*)); *hourly staff makeup* ("Even within the same market, associates per cafe could range from as few as 25 or 30, to as many as 90." (*id.* at 11)); *business volume* ("Even within a single market, cafes differed by tens of thousands of dollars in weekly revenue, from $25,000 per week to $90,000 or more." (*id.*)); and *variations in GM style* ("Some GMs are regularly involved in the day-to-day running of the cafe, while others take a more 'hands off' approach." (*id.* at 12)). Panera also argues that about half the proposed collective is covered by an arbitration agreement (which Panera implemented in June 2016), further distinguishing at least those potential plaintiffs from Friscia. (*See id*. at 2, 22, 33).

Finally, Panera argues that if the Court conditionally certifies the proposed collective, the parties should "work together to draft a notice and opt-in form." (*Id.* at 33). Panera complains

- 8 -

that Friscia's proposed documents are "misleading and confusing." (*Id.*). Among other things, Panera points out that "the notice contains the case caption, which implies the case is endorsed by the Court." (*Id.* at 33-34) (citing *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982)). Panera details its objections to Friscia's proposed documents in its Notice of Objections. (*See* D.E. No. 45-1).

### B. Panera's Motion to Strike Friscia's Motion and Supporting Declarations

Four months after the parties briefed Friscia's motion to conditionally certify the proposed collective, Panera moved to strike Friscia's motion and supporting declarations. (D.E. No. 55). Panera's motion stems from its depositions of Friscia and Manrique, which, according to Panera, establish that "the declarations are, in fact, a sham." (D.E. No. 55-5 at 2). Panera argues that Friscia's and Manrique's deposition "testimony confirms that critical portions of their earlier declarations, which [Friscia] solely relied on in support of her Motion for Notice, are untrue and/or based on guesswork, not personal knowledge." (*Id.*). Panera identifies five general areas where Friscia's or Manrique's declarations purportedly proffer inconsistent, inaccurate, or purely speculative testimony: (i) common corporate training manuals, policies, and procedures; (ii) assistant managers' authority to hire or fire other employees; (iii) day-to-day job duties of assistant managers; (iv) amount of time devoted to managerial duties; and (v) Friscia's discussions with and observations of other assistant managers. (*See id.* at 5-10).

In opposition, Friscia lodges two threshold arguments before attacking the merits of Panera's motion. *First*, Friscia argues that Panera's motion "should be denied as an impermissible sur-reply, and nothing more than a transparent attempt to take a second bite at the apple with respect to Plaintiff's Conditional Certification Motion." (D.E. No. 59 at 3). *Second*, Friscia argues that Panera erroneously invokes the sham affidavit doctrine, which is limited to the summary-

judgment context. (*See id.* at 7). As another court in this District explained: "[T]he sham affidavit doctrine states that 'a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict.'" *In re Front Loading Washing Mach. Class Action Litig.*, No. 08-0051, 2013 WL 3466821, at *9 (D.N.J. July 10, 2013) (quoting *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004)).

Turning to the merits of Panera's motion, Friscia argues that even if the sham affidavit doctrine does apply, "the challenged declarations would not constitute a 'sham.'" (D.E. No. 59 at 11). She contends that neither she nor Manrique lack personal knowledge of their declarations, and that neither declaration is so outlandish as to be facially false. (*See id.* at 11-22). She also argues that "independent evidence in the record—namely, the testimony of [Panera's] own witnesses—corroborates the declarations that [Panera] now challenge[s]." (*Id.* at 23). Finally, Friscia argues that Panera's motion is inappropriate at the first stage of conditional certification, where the Court does not weigh the claims' merits or assess witness credibility. (*See id.* at 28). Friscia notes that Panera "will ultimately have opportunities to challenge credibility and merits issues *after* discovery—at the second stage of collective certification, upon a motion for decertification, or upon summary judgment motion." (*Id.* at 32).

Panera counters that its motion to strike "is plainly a permissible motion to strike brought in good faith based on the falsities and mischaracterizations revealed in Plaintiff's and Manrique's declarations by their own sworn deposition testimony." (D.E. No. 61 at 2). Panera also argues that its motion "is not premised on the 'sham affidavit doctrine" itself, but rather on "the seemingly basic notion that a party should not benefit from baseless and self-contradicted sworn testimony." (*Id.* at 4). And Panera seizes on Friscia's arguments about independent corroborating evidence

and suggests that, if the Court considers the "newly proffered 'evidence' and arguments," it should apply a heightened standard to Friscia's motion. (*Id.* at 1-2) (citing *Sloane v. Gulf Interstate Field Servs., Inc.*, 2017 WL 1105236, at *6 (M.D. Pa. 2017) ("[D]istrict courts in this circuit have applied an intermediate standard . . . if the parties have already engaged in discovery.")).

### C. Panera's Motion to Strike is Denied

The Court declines at this time to strike Friscia's motion for conditional certification or the supporting declarations. In the Court's view, Panera's arguments are better suited for the second stage of the certification process. *See, e.g.*, *Meals v. Keane Frac GP LLC*, No. 16-1674, 2017 WL 2445199, at *4 (W.D. Pa. June 6, 2017) (denying without prejudice defendants' motion to strike plaintiffs' brief and affidavits in FLSA stage-one context and rejecting defendants' "requests that [the court] make credibility determinations" because defendants "will have another opportunity to object to class certification following further discovery"); *Viscomi v. Diner*, No. 13-4720, 2016 WL 1255713, at *5 (E.D. Pa. Mar. 31, 2016) ("To the extent that defendants invite the Court to evaluate the credibility of the affiants or the merits of their claims, it is more properly considered at the second stage of the certification inquiry or on a motion for summary judgment.") (citation, internal quotation marks, and alterations omitted); *In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*, No. 09-0210, 2010 WL 3447783, at *21 (W.D. Pa. Aug. 13, 2010) ("At the initial assessment stage, before discovery is completed, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations.") (citation and internal quotation marks omitted).

To be sure, Panera cites only a handful of cases in the FLSA stage-one context, and not one involves a separate—let alone successful—motion to strike. (*See* D.E. No. 55-5 at 13-14).[1]

---

[1] (Citing *Postiglione v. Crossmark, Inc.*, No. 11-0960, 2012 WL 5829793, at *6 (E.D. Pa. Nov. 15, 2012); *Valcho v. Dallas Cty. Hosp. Dist.*, 574 F. Supp. 2d 618, 623 (N.D. Tex. 2008); *Trinh v. JP Morgan Chase & Co.*, No.

Instead, Panera relies on cases where the court denied motions for conditional certification because the plaintiffs failed to make the "modest factual showing" that the proposed plaintiffs were similarly situated. (*See id.*). And in support of Panera's claim that "this Court has routinely disregarded declarations offering assertions not based upon personal knowledge" (*id.* at 14), Panera cites cases outside the FLSA context (*see id.* at 14-15).[2]

Accordingly, the Court denies *without prejudice* Panera's motion to strike Friscia's motion for conditional certification and supporting declarations. Panera may raise these arguments at stage two of the certification process. *See Bowe v. Enviropro Basement Sys.*, No. 12-2099, 2013 WL 6280873, at *4 (D.N.J. Dec. 4, 2013) ("Importantly, it is possible for a class to be certified at stage one but fail certification at stage two. Granting a conditional certification in stage one is not a final or permanent decision.") (citation, internal quotation marks, and alteration omitted).

### D. Friscia's Motion for Conditional Certification is Granted-in-Part and Denied-in-Part

The Court will grant-in-part and deny-in-part Friscia's motion to conditionally certify the proposed collective. Specifically, the Court finds that Friscia has made a "modest factual showing" of a factual nexus between the manner in which Panera's alleged unlawful policy affected her and the manner in which it affected other assistant managers at Panera locations in New Jersey—but not New York or Massachusetts—during the proposed time period. The Court will therefore conditionally certify the following collective:

---

07-1666, 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008); *Prizmic v. Armour, Inc.*, No. 05-2503, 2006 WL 1662614, at *3 (E.D.N.Y. June 12, 2006)).

[2]   (Citing *Supernus Pharm., Inc. v. Actavis, Inc.*, No. 13-4740, 2014 WL 6474039 (D.N.J. Nov. 18, 2014) (denying motion to seal); *Younes v. 7-Eleven, Inc.*, No. 13-3500, 2014 WL 1959246 (D.N.J. May 15, 2014) (denying motion to seal); *Brennan v. Elizabeth Bd. of Educ.*, No. 07-0329, 2008 WL 756117 (D.N.J. Mar. 19, 2008) (denying motion to disqualify attorneys); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 510 (D.N.J. 2008) (granting-in-part and denying-in-part Rule 12(b)(6) motion to dismiss); *Contr. Drilling, Inc.*, 63 F. Supp. 2d 509 (D.N.J. 1999) (granting motion to strike, in non-FLSA context, portions of a declaration that were "supported only by the complaint" in a separate action)).

> Plaintiff and all other individuals who currently or formerly worked for Panera Bread Company and/or Panera, LLC as assistant managers in New Jersey from February 1, 2014 to the present and did not receive overtime compensation for hours worked over 40 in a work week.

Friscia testified that when she was an assistant manager at Panera's Woodbridge, New Jersey location, she primarily performed manual, non-managerial tasks. (Friscia Decl. ¶¶ 3, 19). She also testified that she attended training sessions "throughout New Jersey," where Panera managers instructed her and "all other assistant managers present" on their day-to-day job duties. (*Id.* ¶ 14). Further, she personally observed assistant managers at other New Jersey Panera locations "performing the same manual tasks that assistant managers performed at the Woodbridge location . . . ." (*Id.* ¶ 16).

Manrique, a former Panera training manager, testified that she attended monthly meetings at various Panera locations—including Princeton, Edison, Old Bridge, and Manalapan, New Jersey—where she "personally observed assistant managers performing the same tasks that assistant managers performed at the Woodbridge location . . . ." (Manrique Decl. ¶ 4). Like Friscia, Manrique explained that these tasks included "making coffee, sandwiches and other food, cleaning[,] and taking orders from customers as a cashier." (*Id.* ¶ 9); (*see also* Friscia Decl. ¶¶ 3, 19).

As for working overtime, Friscia testified that she worked approximately fifty-five to sixty hours per week and was not required to clock in and out for any part of the workday. (Friscia Decl. ¶¶ 12-13). Friscia also testified that, during the training sessions in New Jersey, Panera managers discussed "Panera's corporate time and pay policies . . . ." (*Id.* ¶ 14). Similarly, Manrique testified that assistant managers "would routinely work at least 45 hours a week" and "were not required to clock in and out," as "there was no system keeping track of their time spent working." (Manrique Decl. ¶ 12).

This evidence is sufficient to satisfy Friscia's lenient burden to conditionally certify a collective.³  *See, e.g.*, *Essex v. Children's Place, Inc.*, No. 15-5621, 2016 WL 4435675, at *5 (D.N.J. Aug. 16, 2016) (conditionally certifying a collective of assistant managers); *Goodman v. Burlington Coat Factory*, No. 11-4395, 2012 WL 5944000, at *5-6 (D.N.J. Nov. 20, 2012) (same); *Stillman v. Staples, Inc.*, No. 07-0849, 2008 WL 1843998, at *4 (D.N.J. Apr. 22, 2008) (same).⁴ The Court reiterates that at this stage, Friscia needs to show only that "similarly situated plaintiffs do in fact exist." *See Zavala*, 691 F.3d at 563 n.4 (citation omitted). And Friscia is "not required to show that [her] position[] is identical to the position of other potential class members." *Essex*, 2016 WL 4435675, at *5. Moreover, the Court's role at this stage is not to evaluate the merits of Friscia's claim that Panera misclassified assistant managers as "exempt." *See Goodman*, 2012 WL 5944000, at *5. After notice in this case issues, at the second stage, the Court will address "whether the plaintiffs who have opted in are in fact similarly situated to" Friscia. *See Zavala*, 691 F.3d at 563 n.4 (citation omitted).

As noted above, the Court will limit the collective to assistant managers who worked in Panera locations *in New Jersey* during the proposed time period. *See, e.g.*, *Robels v. Vornado Realty Tr.*, No. 15-1406, 2015 WL 5012597, at *4 (D.N.J. Aug. 21, 2015) (conditionally certifying only certain subclasses of the proposed collective). Put simply, Friscia has not produced sufficient evidence to show that she is similarly situated to assistant managers in New York or Massachusetts. Nowhere in Friscia's declaration does she specifically reference New York or Massachusetts. And

---

3   The Court notes Panera's arguments regarding inadmissible hearsay in Friscia's declaration. (*See* D.E. No. 45 at 25) (referencing Friscia Decl. ¶¶ 16, 18).  The Court need not reach these arguments because it finds that, even if it disregards these statements in Friscia's declaration, Friscia has still satisfied her burden for conditional certification.

4   Another district court recently conditionally certified a nationwide collective comprising assistant managers who worked in certain Panera franchises. *Kis v. Covelli Enters., Inc.*, No. 18-0054, 2018 WL 2227782 (N.D. Ohio May 16, 2018).

Manrique references New York and Massachusetts only once: "I also worked as a training manager, where I trained general managers who worked at corporate Panera locations throughout New Jersey, New York, and Massachusetts." (Manrique Decl. ¶ 2). Indeed, all of Friscia's and Manrique's specific personal observations occurred in New Jersey. (*See, e.g.*, Friscia Decl. ¶¶ 14, 16; Manrique Decl. ¶ 4).

Panera's arguments in opposition are largely unavailing for purposes of the notice stage. To start, the Court declines to consider the fourteen declarations Panera submitted to show individual differences among the assistant managers' actual duties. As another court in this District explained, "this inquiry necessarily addresses the merits of Plaintiff['s] claim and is therefore premature." *Goodman*, 2012 WL 5944000, at *6 (declining to consider thirty-eight declarations submitted in opposition to a motion for conditional certification); *see also Kis*, 2018 WL 2227782, at *2 ("[T]he fact that Defendant Covelli has produced evidence that contradicts the Plaintiffs' declarations is irrelevant. That evidence speaks to the credibility of Plaintiffs' evidence, which is not relevant at the conditional certification stage.").

Panera argues that Friscia's failure to identify—"much less present testimony from"—any other potential plaintiffs underscores the inappropriateness of the collective action. (*See* D.E. No. 45 at 2). The Court finds this argument unpersuasive. For one, Friscia is not required to produce additional plaintiffs at the notice stage. *See, e.g.*, *Essex*, 2016 WL 4435676, at *6 (noting that "courts have certified national classes based on allegations and deposition testimony from a single plaintiff") (citing *Ferreira v. Modell's Sporting Goods, Inc.*, No. 11-2395, 2012 WL 2952922, at *3 (S.D.N.Y. July 16, 2012)). And Panera's authority in support of this proposition is inapposite. (*See* D.E. No. 45 at 2) (citing *Tahir v. Avis Budget Grp., Inc.*, 2011 WL 1327861, at *4 n.1 (D.N.J. Apr. 6, 2011)). In *Tahir*, the plaintiff moved for conditional certification after fact discovery

closed, so the court adopted a heightened standard in analyzing his motion. *See* 2011 WL 1327861, at *2. Here, Friscia moved before the close of fact discovery, and the Court is applying the traditional stage-one standard.

Panera also argues that approximately half the proposed collective is covered by binding arbitration agreements, further distinguishing at least those potential plaintiffs from Friscia. (*See* D.E. No. 45 at 2, 22, 33). This argument is inappropriate at the notice stage, however, because it goes to Panera's merits defenses. *See, e.g.*, *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) ("[C]ourts have consistently held that the existence of arbitration agreements is 'irrelevant' to collective action approval 'because it raises a merits-based determination.'") (quoting *D'Antuono v. C & G of Groton, Inc.*, No. 11-0033, 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011) (collecting cases)).

In sum, the Court finds that Friscia has satisfied her lenient burden to make a "modest factual showing" of a factual nexus between the manner in which Panera's alleged unlawful policy affected her and the manner in which it affected other assistant managers at Panera locations in New Jersey during the proposed time period.

### E. Friscia's Proposed Form of Notice

Friscia submitted a proposed Notice of Lawsuit and Consent to Join Lawsuit forms to notify potential collective-action members of this case. (D.E. Nos. 40-3 & 40-4). As noted above, Panera objects to Friscia's proposed forms. (D.E. No. 45-1). "The Supreme Court has instructed, 'in exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.'" *Herring v. Hewit Assocs., Inc.*,

No. 06-0267, 2007 WL 2121693, at *9 (D.N.J. July 24, 2007) (quoting *Hoffman-LaRoche*, 493 U.S. at 174).

The Court instructs the parties to meet and confer about Friscia's proposed forms and then submit agreed-upon proposed forms—along with details regarding the method and timing of notification—to the Hon. Steven C. Mannion, U.S.M.J., within fifteen days of the date of this Court's accompanying Order. *See id.* This process will ensure that timely notice is provided to the potential collective-action members. *See id.* If the parties are unable to agree on proposed forms, each party shall submit to Magistrate Judge Mannion, within twenty days of the date of the accompanying Order, its own proposed forms—along with a letter brief (not to exceed three single-spaced pages) in support of its proposed forms—and details regarding the method and timing of notification. *See Bowe*, 2013 WL 6280873, at *7.[5]

### IV. Conclusion

For the foregoing reasons, the Court GRANTS-in-part and DENIES-in-part Friscia's motion for conditional certification and DENIES *without prejudice* Panera's motion to strike. An appropriate Order accompanies this Opinion.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**

---

[5] In light of this expedited meet-and-confer process, the Court declines to toll the claims of potential collective-action members. (*See* D.E. No. 46 at 15).